Case No. 21-1263, et al. Board of County Commissioners of Weld County, CO v. Environmental Protection Agency and Michael S. Reagan in his official capacity as Administrator of the U.S. Environmental Protection Agency. Mr. Davis for the petitioners in case No. 22-1? Mic Sang-Ramain for the respondents in case No. 22-1113? Mr. Bhatt for the interveners for the respondent in case No. 22-111? Mr. Shampman for the petitioners in case No. 21-1263? Mr. Higgins for the respondent in case No. 21-1263? Mr. Mavart for the interveners for the respondent in case No. 21-1263? Morning, Council. Mr. Davis, please proceed when you're ready. Bill Davis from the state of Texas, from the Texas Commission on Environmental Quality, hoping to reserve three minutes for rebuttal. I'm going to present two challenges to the final. The first is that it's impermissibly retroactive in that it set an attendance date or deadline for El Paso County that passed before that county was first designated as a non-attainment area. And the second is that EPA called for action on modification. But under the Texas statute and this court's decision in Wisconsin, the remand instructions there are properly read. It can only be a redesignation. And under Section 7511B1, a redesignation opens a prospective three-year window for a marginal non-attainment area to retain. So, I'll start, if I could, with the retroactivity point. Can I just ask a question which relates to where you're going to start? It doesn't matter, suppose that we think there's potentially something to either of those arguments. Is there some natural order by which we would consider them because one of them subsumes the other or one of them gives different belief than the other? Because as I roughly understand it, the consequence of concluding as you urge that what happened on remand was a redesignation rather than a modification is that then there would be three years, hence, to attain, which is typically what happens with a redesignation. The consequence of retroactivity would roughly be the same thing because your point is that you didn't get to three years if you put the attainment deadline before. Is there a natural order to this? Is there a reason that we would consider one before the other? The court can take them in either one. And regardless of whether it agrees with one or both, the result is the same. It will be vacated and there should be a redesignation that allows for that three-year window. So, from your perspective, you don't care which way we go? That's right. If the court prefers me to start with one place or another, otherwise, I'll start with retroactivity and just say that EPA doesn't argue that it has power under either the EPA or the Clean Air Act to regulate retroactivity in this context. It also doesn't say that the challenge part of the rule operates in any perspective. It instead says that the attainment date that we're focused on is essentially inconsequential in that it is regulated reasonably given the service status. But that attainment date is not inconsequential. It's a core feature of the act's cooperative federalism under which, as this court has recognized, EPA sets the standards and then states have an opportunity to meet those standards. And here, Congress has said, it'd be safe to three years trying to attain it. So, can I ask this question just to crystallize in my own mind at least where this retroactivity issue rises or falls? Suppose tomorrow EPA decides that even though the attainment date is the August 2021 one and that the announcement of that date was after that date had already passed, we haven't determined yet whether you were in attainment as of that date. And suppose that the EPA decides tomorrow, actually, you were in attainment. We don't know yet that they won't do that. I think we can have some predictions, but I don't know the empirical data on this. But their point, at least part of their point, is we don't know yet. So, they decide tomorrow you're in attainment. Is there still a retroactivity issue before us? Is there, what's the injury that you would have suffered? Sure. So, the injury that we're talking about is that elimination of, it's a procedural right that we have for three years. And so, EPA has said, well, what you're talking about, reclassification, if we make that determination, that hasn't happened yet. They're right about that. What we're saying is that Congress gave states that three-year period. And we can see, and we cited some examples on page seven of our reply brief, that states have taken advantage of that three-year period and met that attainment goal within three years. And so, it's not an empty right. And in fact, in Whitman versus American Trucking. So, even if EPA decided tomorrow, even if they decided today, even if they announced today an argument, actually just been a determination that you are in attainment as of the attainment deadline that passed, we should still rule in your favor and vacate the rule on retroactivity. It won't be yes because the rule isn't valid on that basis or because EPA tried to create a new modification power that the statute doesn't support. Suppose they didn't understand the order itself. Suppose they said, the attainment deadline is passed. Either way, you are in attainment as of the attainment deadline. So, in that hypothetical, I'm not sure we would have the same injury to complain about. We didn't have any injury. If the area were not designated non-attainment and basically, it would be the effect of the remand was to essentially confirm that El Paso was and continued to be an attainment area. I don't know that they would be here. I know you wouldn't. You may not be here because you suffered no harm. But I'm just trying to understand, would there be a violation of a retroactivity principle? It's an interesting hypothetical that I haven't fully thought through. I would say though, on this record. Let me give you another one that maybe, I don't know if you would have thought of this one, but I just want to see if there's immediately, if there would be a difference. Suppose EPA in the future, suppose there's a situation in which EPA proceeds as you think they normally would, which is to give the three years to come into attainment after announcement. So, they give the three years. At the end of the three years plus the six months that they have to actually make the classification. They say you are an attainment. Now, just to let you know, actually we measured attainment not by reference to the date that was three years ago. We measured attainment by reference to a date that was six years ago. You didn't know that. You had no reason to know that at all because you only knew about the three-year date. You didn't know about what happened six years ago. But that's how we measured attainment. But you're an attainment. Would there be a, that would be equally retroactive. Would there be a retroactivity claim? I think EPA would have a much stronger argument because the retroactivity analysis is not a black and white proposition as the court has recognized. If the party in that position could show no harm from it, I think it would be a harder argument to win a retroactivity case. Then let me ask one last one and then I know there's going to be other people that have questions but I'll just continue this stream of consciousness riff for a second. Suppose then, what's wrong then with saying if it's possible that in these kinds of situations there wouldn't be a retroactivity challenge that would win, then what's wrong with in this case just waiting to see what EPA does? What cost, what injury are you suffering in the interim while EPA waits to decide? You may well have one, I just want to know what it is. Right, so it's a procedural injury of not being able to do anything. You know, before this rule came down, August 3rd of 2021 was just any other Tuesday. And then after this rule, it's all of a sudden the date by which we would have been judged. And so that's just not how the act operates. And if we wait until there's some further action against Texas, I would expect EPA to argue forfeiture as to this retroactivity argument. Well, suppose we don't allow that. We're just going to hold the retroactivity challenge. We're going to insulate you from being procedurally barred from getting a retroactivity win at that point. Let's just, I don't know exactly how we'll do that, but let's just suppose we will. What's wrong with that and waiting to see what EPA does? If the EPA says you're in non-attainment, then boom, you've got your retroactivity argument. If EPA says you're in attainment, because you didn't have the three years to come into attainment. If EPA says you're in attainment, so no harm, no foul, then even you've indicated that you're retroactive, you wouldn't even bring the retroactivity challenge in that instance. What's wrong with that? Well, I suppose that the court is saying that we can bring this same challenge later or we just hold this present challenge until EPA makes a decision on whether you are in attainment. I would say that the court should still rule in our favor here because, again, if you go next to Whitman, the Supreme Court identified Section 7511A1, which is the three-year window is the backbone of Subpart 2 of this part of the Clean Air Act. And allowing EPA to do this retroactive rulemaking just cuts the state out of that congressionally guaranteed window of time to attain. But if I could move to the modification. Let me just rephrase you. What's puzzling to me about this is I think the order is clearly retroactive in the sense that it creates a new exposure arising from past events, exposure. But we don't know whether that caused any harm. You either did or didn't meet attainment as of the attainment date. That's just a fact about the past. There's no agency discretion. They have to decide that. And there's a formula by which they decide that. How do we – I don't know of any other retroactivity case. If you focus on, you know, will the exposure lead to a more concrete – it's a loaded word for standing, but a further injury. So we don't know if the question is just, you know, does the order operate to change the past consequences, past events? The answer is yes. Exactly. And that's the test for impermissible retroactivity. And I think one thing that the state could have done differently is submit, as Texas has done, a 179B demonstration earlier so that EPA would have had longer to consider that before the attainment date was coming up, or in this case, retroactive. But again, I think there are certainly states that have met that attainment deadline. And the way that EPA has approached this here just forecloses that result. But you still might. I mean, that's the tricky thing about this is you still might. And I'm not sure that the just-the-language legal consequences doesn't necessarily, at least in my own mind, get a party all the way home on retroactivity. Because in most situations in which there's legal consequences, there will have been some kind of detrimental reliance. There will have been something that the party can point to to say, this is how we're harmed. And I know that there's also an injury component to standing. I get that. But I'm saying just in terms of retroactivity itself. And I think there's a forceful submission on your part that if EPA deems you to have been a non-attainment and you didn't have the time period to come into attainment, cause deadline passed before you even knew that this is a possibility, that seems like a retroactivity question, seriously. But if you-if it turns out you actually were in attainment, then it's not clear to me. And as Judge Katsas points out, we just don't know the answer to that right now. Either the fact is baked. But we just don't know which way that cuts yet until EPA says something about it. I think all that's correct. But again, in our view, we have a procedural injury. And maybe just to avoid repeating myself on that point, if I could offer maybe an analogy that could be helpful. Let's say that there's an employer that tells an underperforming employee on one day you're underperformed, we're going to put you on a performance improvement plan. There are two components to that plan. One is four weeks from now, we're going to reassess your performance and you can't shave off. The second one is you get to fill out this form telling us what you're doing, what you plan to do. But in practice, the employer says, well, actually, you know what? That first part, we're going to evaluate your performance as of four weeks ago. But on the form, take some more time. You can get that in later. I don't think anyone would say, well, that's fair because, you know, for one, what's this guy going to do? He's not going to change anything. So, you know, look at his performance four weeks ago or four weeks later, it's going to be the same result, and we gave you some more time for the form. I don't think anyone would say that's an okay way to treat an employee. And here we have, again, Congress saying that there is a prospective analogous to provisions in that part one of the performance improvement plan hypothetical. If I could, though, unless there are further questions on retroactivity, I'll move to modification because, as Your Honor noted at the outset, it's an independent way for us to win this case. And I think it's a clear example of EPA doing something that statute doesn't allow under the cover of this court's remand without vacater. And I think this may be the most significant part of this case because remand without vacater is controversial enough already, but if we take it beyond where it is now to a point where it's allowing agencies to do something that statute doesn't allow, I think that's just a different level. And if there was vacater, would you think that what happened on remand would be a redesignation? If there had been, yeah, so if the rule had been vacated in Wisconsin, there would have been three years because EPA would have had to designate here, right? And so because there was a remand without vacater, it doesn't give EPA additional rights. It just moves the analysis from 7511A1 to 7511B1. And I guess, to me, it seems it would be a little surprising if the panel that remanded thought that what they were remanding for is a redesignation. Well, the redesignation could happen anytime anyway. Well, the court used that language. So the court used the language, revise the designations. Right, not redesignation. Well, no, but that language tracks redesignation. So in 7407D3, Congress used revise. So why remand? If they really thought redesignation, that can always happen. Well, sure. I mean, what the court said in Wisconsin was there's a realistic possibility that EPA is able to substantiate these designations on remand. So I don't think it was suggesting, you know, any particular result. But the only path open to EPA was a redesignation. Modification is the province of 7407D1B2. That applies when the agency, the administrator, is modifying the governor's initial designation. But that has to happen. Suppose we had, well, if we had vacated, why wouldn't the task on remand clearly have been a modification in the sense that the statutory sequence is, as I understand it, the governor makes a proposed designation, EPA modifies or not. So there's state action, federal agency action, and then there's judicial review. We take a second of those off the books. The only thing that's there is the governor's proposal, and EPA is acting on that. And that is either acceptance or modification. Right. So it's either humiliation or modification and humiliation as the governor's designation. Right. So either way, that's going to open for a marginal area a three-year window for extension. This is a little bit of an odd case. We didn't vacate, but we did say that the modification under review was not legally, not yet legally supported. So that's what EPA said. We understood them to have been conceding that. Right. That was the case for the remand. It is unusual. I think the court pointed that out, that usually the agency would come up here and say there's just what's wrong with it, and the agency wouldn't even say that, which is why the court said there's a realistic chance they're going to do the same thing on remand. It makes it look more like they're finishing up the work they had done in the past. And they did a chunk of work in the past that was fine, and now they're changing it. But we have to be guided by the text of the statute. Right. The court can't. I don't think the court would say it can order EPA to do something outside of the text. If I can point to section 7407, D1B4. That says that D1B, B, B, little Roman four. Okay. That's a short provision in a sea of long provisions. And it says when an area is designated, that designation shall remain in effect until it's re-designated. So when the court remands a designation without vacating it, that designation remains in effect until it's re-designated. So you don't even think that if the original panel had foresight to see through all this and understand the sequence of events and want to actually dictate what was going to happen, couldn't the original panel have said, we've got a petition for a vacater. There's various collateral reasons for which we're not going to go to that extent to vacate. But we are remanding because EPA has acknowledged to us that it's showing it's insufficient. At least that's what we're construing EPA's motion to remand to be. But we want to make clear that when we're remanding, we're not saying there's going to be a re-designation if EPA switches and renders it non-attainment. That's going to be a modification. Or that's going to be the original final designation. It's just going to be one that's dated later. I think that would be an extraordinary thing for the court to do. Because it would be saying, EPA, don't worry about what the statute says. Just go back and do this quickly outside of the modification. So aren't we always outside the land of the statute in some of these situations? Because the statute also says that the agency has to accomplish the... I'm going to get my terminology mixed up. But they have to determine whether the area is in attainment or non-attainment within two years and then potentially one more year of the adoption of an act. Sometimes if you vacate and remand, it could be that that happens well after three years. But ordinarily, we just assume that a court can do that because it's a part of what happens with judicial review. Well, you're understanding about a shall provision. Something that EPA has to do. So EPA can always be here. EPA always, or not always, but often, misses deadlines. And it gets faced with citizenship. And the citizenship says, shall, you have to do it now. I'm not talking about that with modification now. It's a may provision. The administrator may modify a governor's designation within a certain time. And so that's off the table at this point. And I think one of the cases that EPA provided here is wildlife gardens. And I think that's an interesting case, for this case, in a few ways. But one of the interesting parts of that case here, though, is that if the court had accepted the petitioner's view of what should have happened, it noted that that would have nullified the effect of another provision of the act, section 7513. And that was a reason to say, well, we're just stuck. We can't do anything that's going to fully comport with what Congress told EPA to do here. We don't have that situation here. EPA has not denied that it has the power to create side-by-side non-attainment areas and give the state of Texas its three-year congressionally provided period. It just says, oh, this is not good policy to do that. I'm going to ask this question. After the remand, if EPA had said attainment again, but they would have to supply more information to bolster that because we raised some questions about the explanation in the first instance, right? And so the basis for the remand was basically, we take you at your word that your submission was insufficient, your record was insufficient, and we're sending it back so that you can do some more and bolster that. So they do that and bolster it. And then they say, and we still find attainment. So that would be the new designation, right? I guess so. I think I might push back a little bit against that description of it because as I understand it in Wisconsin, it was EPA saying, we're just not going to defend this as it is. It wasn't the court saying, this is deficient. Go back and show your work some more. But I thought what we said was, we're sending it back because it's true EPA's request for taking it back to be an admission that we didn't do enough. Oh, okay. Yes. I thought we said basically that. I think that is correct. And so I'm sorry, I misunderstood the direction of the question. Yeah. And so then what EPA does is they take it back and they say, okay, the court has understood us to not have done enough. We're going to do more, but we still reach the conclusion of attainment. So they come forward with a new, they have to do a new explanation. They come forward with a new explanation. And then that's then the relevant event for purposes of judicial review, not what they'd already done, even though they're re-ratifying an attainment, they're ratifying an attainment with new explanations. So that's the new event. Yeah. So in that circumstance, I would think the original designation, it remains and there's just, there's more support for that same designation. Right. But then, but that more support, the date of the designation would be the new one, not the old one. I would think it would actually be the old one because the EPA would then be just be supporting what it initially did. And how would there be judicial review of it? Because the limitations period would have passed. Well, I would think that there would be continued judicial review by virtue of demand. I guess I'm not certain. I don't think we retained jurisdiction when we remanded in this situation. So there has to be a petition for it. If what EPA did is come out with a new rule that under the Clean Air Act could be subject to a petition for review, then yes, that would be... Wouldn't they have to? Because if they wanted to bolster their explanation, they'd come forward with a new rule that bolsters the explanation. I suppose. I suppose. So then what I'm getting at is if that's true, they're doing something new, but we still, and the way you're thinking of it, it's through that as just redesignating as attainment and not redesignating, designating again as attainment. And why doesn't that also follow through to changing it to non-attainment? That it's still doing the same thing we did before. We're just doing that same thing again now. Okay. So maybe I understand this. So in your hypothetical, there's no attainment date that's created by virtue of the attainment designation. So that clock doesn't start running. But if the EPA comes back and does a redesignation or initial designation, however it styles it, from that date, there is an attainment date under Section 7511A1, and that's what we're saying the states are entitled to. I was trying to draw a distinction between the attainment deadline and whether it's a redesignation, because I think there may be... It could be a necessary consequence of it being a redesignation that you get the extra three years. But could it also be that you get the extra three years even if it's not a redesignation and it's just a redoing of the original designation? Yeah. If it's a redoing of the initial designation, there wouldn't be that period in play because it was an attainment designation. Okay. Right. Make sure there's no further questions at this time. Okay. Thank you, Mr. Davis. Ms. Saint-Romain. Good morning, Your Honors, and may it please the Court. My name is Alex Saint-Romain, and I'm here today on behalf of EPA. I'm joined at Council's table today by my colleague Elliot Higgins and Seth Buxbaum of EPA. For this Court's order, I'll be using half of the United States' time to respond to Texas's arguments regarding El Paso's designations, and I'll be sharing two minutes of my time with Davis. Counsel for Intervenors Supporting the El Paso Designation. In Cleveland, Wisconsin, this Court remanded 11 designations to EPA for reconsideration, directing EPA to complete the remands as expeditiously as practicable. On remand, EPA reconsidered its original designation for El Paso and determined that El Paso contributed to Doña Ana, New Mexico's nonattainment of the 2015 ozone maps. Given that Doña Ana was already a properly designated nonattainment area with statutorily imposed effective unattainment dates, EPA determined that the best path forward was to revise the boundaries of the pre-existing Doña Ana nonattainment area to include El Paso. In doing so, EPA treated El Paso consistently with its designations of all remanded areas and the way EPA generally designates contributing areas. But agency action that designated El Paso as nonattainment happened on November, in November 2020. That's correct, Your Honor. And the status quo before that wasn't even that there was nothing in place, it was that there was precisely the opposite designation in place. That's correct, because the score did not change. Okay, so the agency action that created nonattainment for El Paso backdated their attainment date by three years. The attainment date is August 3rd, 2021, and the rule is November, the rule came out in November of 2021. Right. But taking your point, I think the big picture point I'd like to make is that the attainment date does not, the past attainment date does not render the rule retroactive, because there are no duties imposed upon Texas associated with the attainment date. So the only- There will be massive duties imposed if it turns out that they missed, they did not attain as past attainment date. That is true, Your Honor, so- And your only response to that is, well, you haven't made that decision yet. That's not a discretionary decision. You're obligated to adjudicate a past fact about the world. They either attained or they didn't, and if they didn't attain, they have lots of regulatory burdens imposed on them. That's true, Your Honor. I think I'd like to make two points in response to that. The first is that it is reclassification. We can see that reclassification has consequences, but reclassification itself is not a direct consequence of a marginal non-attainment designation, which is what we're talking about in this rule. The only legal consequence to impose on Texas of a marginal non-attainment designation is that Texas must amend TIC provisions, and that TIC provision must do two things. It must inventory current emissions, and it must impose new source review requirements, which are just meant to prevent further deterioration of air quality. So there's nothing- there's no measure that Texas would have been required to take between the effective date and the attainment date that would have made a difference in whether the non-attainment area was inattainment as of the attainment date. But the statute has a pretty precise calendar to it, right? And it's- in a sense, there's a doomsday machine that's turned on when there's a marginal non-attainment designation. A couple of things happen. You get the attainment date three years out, and then you attain or not, and if you don't, there are consequences. That is true, Your Honor. I think as an initial matter, it is really important to note here that the Clean Air Act does not contemplate this exact situation where an original designation is remanded, and on remand, EPA determines that that original designation is erroneous, and EPA is then in the situation where it's trying to figure out the best thing to do with respect to El Nino and other 10 areas that were remanded, and given the fact that there already is a valid non-attainment area in place. So I think that that is an initial starting point, but I think also an important point to make in answering your question is looking at, like, broadly how non-attainment areas for ozone are designated. So ozone, for other maps, EPA will designate an area as attainment or non-attainment. For ozone, the Clean Air Act goes further and designates areas into specific applications based on their level of non-attainment. It's five or six different. Right. The marginal non-attainment designation, those are areas that are the closest to attainment, and really when you look at the requirements imposed upon states, marginal non-attainment areas, the point of the marginal non-attainment area is really a holding pattern in a lot of ways. It's meant to ensure there is not further deterioration of air quality, but it's not meant to give the state, or it does not impose requirements that the state takes to make air quality better. But maybe not while, maybe not from the status of having been designated marginal non-attainment, but there are consequences if they miss the attainment, if they don't achieve attainment by the attainment date. They get downgraded to a level, I forget what, moderate or something, which does trigger a lot of burdens, regulatory burdens. Certainly, but that has not occurred yet. Right? I think the point that I was trying to make is that it could, but only after one EPA makes a determination that the state is not in payment as of the attainment date, which has not yet occurred. But it's not discretionary, right? You can't just say, oh, this might be unfair, so we're just not going to make that determination. Um, it is not discretionary, but it is a finding that EPA has to make. But also, although it's not discretionary, there are intervening events that could result in the area not being reclassified, even if it is a non-attainment. And one of those is this 179B demonstration. Right. So put that to one side. I know that it's a complicating feature here, the 179B demonstration. And we can get into whether there's some collateral thing that nobody saw on the horizon that then comes in and says it doesn't matter because you're still in attainment. It has to be the case that an area is worse off if they're deemed to be in marginal non-attainment than if they're deemed to be in attainment. Yes. So if it's an area that's worse off, that's what it would be. So a state who has an area that's deemed to be, is that not true? Worse off in that there are requirements imposed upon the state. And those requirements are that the state submit a SIP revision. And the SIP revision, again, inventory the current commission. Right. But if they're in attainment, they don't have to do the SIP revision. They don't have to do a SIP revision if they're in attainment. And that, I think, is important. So then I guess where I'm going is, if the state, if the area is deemed to be in non-attainment, as opposed to deemed to be in attainment, as of the past attainment deadline, then requirements kick in that they wouldn't have otherwise faced. And if the attainment deadline had been put three years in the future, they might have been able to avoid ever having those requirements imposed on them, because they could come into attainment by the attainment deadline. So I just, I'm not, I'm so just backing up to make sure I'm not exactly sure I'm understanding. But I think, so the first point I want to make is that, yes, there are consequences of a state being designated as a marginal non-attainment area. Those consequences are SIP revision. And EPA gave Texas additional time to submit a SIP revision. Now, in the world, I think this is what your question was getting at, is if EPA were to re-classify the zoning on a non-attainment area as moderate, Texas wouldn't have an opportunity to try to attain by the attainment date. I think that is not a primary retroactivity issue. I think that is a secondary retroactivity issue. And that is because the CUNARAC would not have required Texas to take any actions between the effective date and the attainment date that would impact whether the state is in attainment as of the attainment date. And so, you know, Texas's argument that it could have imposed measures really boils down to a contention that expectations were upset. It wouldn't have required actions during that three-year runway. But there would have been consequences if Texas didn't meet the attainment date, right? If EPA... To get downgraded to moderate non-attainment. Certainly, Your Honor. But that is not in and of itself a direct consequence of the marginal non-attainment designation because it does not happen as a matter of course when an area is designated as a marginal non-attainment area. It only happens... If you don't do whatever you have to do to attain. Not quite, Your Honor, because... Well, if there aren't any steps... Putting aside these quirky defenses about foreign pollution or extraordinary events. If the state had not... So, if during the three-year period the state had not taken any voluntary actions to attain, then I think the point that I'm trying to make is that the marginal non-attainment designation does not require the state to have taken any action. All right, let me try it this way. When you're designated marginal non-attainment, two things happen. One is what you're calling a requirement, which is you have to submit a state, okay? And you took care of that issue by extending the debt. But a second thing that happens, you're saying it's not a requirement, but I'll call it an exposure, which is as a result of that designation, if you don't clean things up within three years, a bunch of other things will happen, right? And it may or may not, but it's a present exposure. It's baked into the legal situation that right there it is. Yes, and I think that that really gets to... So, generally, agencies change rules all the time that impact a party's past conduct in that maybe the party would have acted differently if the law had been differently in the past. And I actually think this situation is akin to the Treasurer's State Resource Industrial Association case. And in this case, this court upheld EPA's practice of designating an area based on pollution data that was collected before EPA made the NAAQS more stringent. And that's before the industry groups knew that they would have to abide to these more stringent NAAQS. And I think the arguments the petitioners are making here are very similar to the types of arguments the petitioners made there, which is that here, Texas could have been able to act differently if EPA properly designated the El Paso as part of the Doña Ana non-attainment area in the first place. But the mere fact that Texas could have acted differently does not render this rule retroactive because nothing about the marginal non-attainment designation itself required Texas to take any action. I may be misremembering. May have misread it. But my recollection is that was just a case in which what was challenged was there was there was an attainment designation made at a particular time and it had legal effect going forward. And the retroactivity argument was, well, yes, but it's based on data from the past. That seems very different from what's going on here, which is the statutory scheme is you have the designation. It triggers this three-year, what I'm calling a present exposure. Maybe Texas is calling it a procedural right to clean up over three years, right? And that is vitiated here where you backdate. You issue the new order and don't give them any of that three-year period. Your Honor, I don't actually think it's that different in terms of the types of arguments that Texas is making here because the whole point is treasured. It's not just use of old data. It's actually backdating the, I get the term, the designation date. Right, the effective date. Yes, but the argument that petitioners were making there, which is the argument that Texas is making here, is that they could have taken action. If they had known that the maps were going to become more stringent, they could have taken action in the past that might have impacted what their classification was when EPA classified. And I'm just comparing that to the argument that Texas is making here, which is that if in the first instance, there might have been steps that they could have taken before the area, that would have impacted whether the domain on a non-attainment area was an attainment as of the attainment date. And in both situations, I think we believe that that type of an argument is really a secondary retroactivity argument in that what the parties are arguing in both cases is that their expectations about what the law is and what the law would be have been upset by the agency's action. And in the instance of secondary retroactivity, a rule is only valid if it is arbitrary and depreciate. But are you, I think I get the terminology confused between marginal and moderate. So, but marginal is the lowest one. Moderate is one step up. Okay, so what's at stake here is the attainment deadline was set before the date that EPA promulgated the instrument that's under review. That's what happened, right? EPA promulgates the non-attainment designation or it pulls El Paso into Las Cruces and it makes it one area. And then Texas never knew that that was a possibility because El Paso previously was deemed to be attainment. Now it's part of a non-attainment, right? Correct. That's Texas' argument, yeah. No, no, that's just the fact that it's a possibility. It is, yeah, the premise for the retroactivity argument. Right, right. And then at the same time that EPA makes that move, which is a move, it's different. It changed the state of the universe. It also said the attainment deadline has already passed, right? And then the point is if the attainment deadline had yet to pass, then the affected entity could take actions to come into attainment by the time of the deadline. Whereas now that's just off the table because the attainment deadline has already passed. That's just true. That's just fact. So the legal context of that may be open to debate, but that all is, I think, just fact. Yeah, I think so. With one caveat, which is that I think I would just like to reframe what EPA did here because I understand looking at it narrowly from Texas' perspective, it looks like what EPA did was set an attainment date in the past. But what EPA was trying to do here is... Yeah. Okay. I don't know. I don't mean to cut you off, and I didn't mean to suggest that what you're about to say is obvious. I think I understand that it's a complicated situation because of the remand. And because there was already a validly designated Donald M. O. Martin area that El Paso contributes to, which is not a fact that Texas takes issue with. Right. And so I, at least, I understand the rationale for folding El Paso into the area that already existed because you want to keep all that as one sacrosanct area. So I get that it creates a complication in terms of the attainment deadline because that attainment deadline already was in place for the area as it was previously defined. Right. Yeah. And then EPA has to make a determination of what to do now that there's a remand to figure out the El Paso piece of it. Yeah, I understand that. I guess the point still holds, though, that from Texas' perspective, El Paso, until that point, had been in attainment. And then Texas is told, oh, actually, it's part of a marginal non-attainment area. And the attainment deadline has already passed. And whereas EPA could have done it so that the attainment deadline is off into the future, it could have. It could have done it for the whole area, for example. It could have. I mean, I don't think there's any law that would have prevented it. Well, I do think that in revising the boundary, EPA didn't see changing the effective date and the attainment date as being a viable option. So the fear of- But wouldn't it have been unlawful to do it? I mean, is there some statutory prohibition against saying, because of all the equities at stake, we redefine the boundaries and we're just going to give that area, the entire area? Well, there are very limited instances where EPA can change an attainment date. EPA can get extensions one year, but only if certain requirements have been met. And I think, in EPA's perspective, that it would have been an act of statutory authority to have used this court's remand to change the attainment date for the entire non-attainment area in a manner in which it couldn't have done outside of this court's remand. Okay, so then it could- I haven't thought through that, and that might be right, but then it could have at least done what Texas suggests, which is treat El Paso as its own area and give it- Now, that may be- I can understand the programmatic reasons why that's some option. I get that. But I'm just saying, as a matter of law, I'm not sure of a reason why EPA couldn't do that. Is that barred by the statute? So, the clearance does not explicitly state that a contributing area cannot be designated as a separate non-attainment. And the non-attainment area is separate from the byway the monitor contributes to. But EPA does believe that that creates an unworkable statutory scheme in a lot of ways. And I can provide your honor with two examples. So, let's just say- I'll accept that. I'll accept that it's unworkable from EPA's perspective, because I'm just trying to get to the retroactivity. But I take the point that there may be some serious workability issues there. So, but at the end of the day, the fact remains that Texas is dealing with El Paso, which until then had been an attainment, and it's now part of a non-attainment area. And the attainment deadline has already passed. That's just a- So, whether we think about a secondary retroactivity or primary retroactivity, I thought part of your submission was, there's not even a retroactivity problem. Because actually, we haven't determined yet whether El Paso was in attainment as of that already passed attainment. The point that we were making- yeah, the point we were trying to make is that this is not a primary retroactivity issue, because there are no new legal duties imposed upon Texas associated with the attainment date. And that even if we accept that it's outside of Texas' expectations, it's not a secondarily retroactive issue, because it's not arbitrary and capricious. I think the point that- Even if EPA finds that there was non-attainment as of the already passed attainment deadline. Yes. Even if Texas- I'm sorry, even if EPA finds the area is a non-attainment, the rule itself is not retroactive, because that finding of non-attainment as of the attainment date is not a direct consequence of a marginal non-attainment designation. How is it not? Because- The setting of the original designation sets the attainment date and triggers an obligation for EPA to adjudicate the area of attainment. Certainly, but reclassification itself and the consequences that flow from reclassification are by no means a certain consequence of just the fact that EPA has to make an attainment determination as of the attainment date. And I think that's particularly true in a case like this, where it's not just that EPA hasn't yet made the attainment determination, but there's some serious factual issues here that could result in the area not being reclassified, even if it remains a non-attainment- Because of the demonstration project? Because of the 179B demonstration that's been submitted by Texas and New Mexico. And frankly, that's a big reason why EPA has not yet made an attainment determination, because it is determined it appropriate to give due consideration to Texas' 179B demonstration before determining whether the area is in attainment as of the attainment date. But that's the foreign pollution issue? Exactly. But that's just a variation on the chief's original point that, you know, maybe they'll ultimately be judged to be in attainment. Right. Correct. Okay. I just have one question on the redesignation. Yeah. So why isn't it a redesignation? If the statute works in the way that Texas says it does, and that's the only statutorily available way to reach a non-attainment resolution of something that was previously to be attained? We believe that it was not appropriate for EPA to use its redesignation authority here for two reasons. The first is that EPA uses its redesignation authority when there's already a valid ozone designation, and EPA is presented with new data or new modeling showing that that validation should be altered in some manner. Here, there is no valid designation. This court remanded the designation to EPA and said that EPA needed and treated a remand as a concession, that EPA's explanations in support of the designation fall short of the plainer act. So the load-bearing weight is on the word valid because there was a designation. You're just saying... Yeah. There's no preexisting valid designation, and on remand, EPA looked at the same data that was before it when it made that original designation determination. And the second point I'd like to make is that EPA did not feel that it was appropriate to use its redefinition authority because this was remanded to the EPA from this court. A remand is generally an opportunity for an agency to reconsider the original action that was before the court. The original action that was before the court was section 107D designation, not section 107, I guess it's also D, but D3 redesignation. And so EPA did not feel it would have been appropriate to use the court's remand to take a completely different regulatory action. What if you have a situation in which the EPA has reached a designation and has announced it, and then later on they think, oh boy, I'm looking at the same data again. I realize we put a plus in the minus column, and it turns out it should have been designated all along as non-attainment, even though we said attainment. Then what you would have is an invalid designation. Would then that mean that EPA would do the... Use the redesignation power to redesignate it, or would EPA then say, oh, we're just going to redo the original designation because the mistake was in the past based on the record that we already used? Yeah, there is, I believe in section 110K, there is a mechanism for EPA to fix mistakes. The EPA did not rely on that here, again, because EPA thought it was appropriate to look at the action of before the CLEMA content court and reconsider that action and revise the boundary using that exact same authority of that issue before the court in Clem Wisconsin. Last question I have, then I'll let you sit down. Does EPA have an objection? There may be other problems with this, but would EPA have an objection to us holding the retroactivity claim pending determination either through the demonstration project or anything else, including whatever ultimate designation decision is made by EPA on whether there's attainment or non-attainment? EPA may not have a problem with the court taking that approach, but we do not feel that it's necessary here because we feel that the rule is not retroactive. Thank you. Thank you, Mr. Abbac. May it please the court, David Abbac on behalf of the Environmental and Intervenors in Support EPA. We represented, I represented the El Paso groups that were petitioners in Clem Wisconsin. I'm also a native from El Paso, so I'm happy to answer any questions about that. I wanted to take my, use my time to answer a question, two questions. One that Judge Cass has asked and one that you asked, Chief Judge Shirinavasan. Judge Cass, you were asking about this issue of the exposure, and I would say that the exposure always exists for every state at all times. We all agree, I think, that regulation is not retroactive just because it uses antecedent facts. That's the Leningrad case, and the Clean Air Act is a remedial statute. It's designed to look at the antecedent facts of an area, see what the air quality is, and then impose the classification that's correct based on the seriousness of the problem. Actually, in the Sierra Club versus Whitman case that Texas relies upon, it's not part of the whole thing at all, but it's just a background fact that that case, that area was designated as a moderate unattainment area, same concerns that Texas is concerned about. Based on data from 1987 to 1989, there would be no retroactivity problem whatsoever if Congress looks at an area and says it's really polluted as a result of past conduct and from onerous cleanup restrictions on the area, right? That's fine, and I think you're analogizing to that, but what we have here is just a different scheme, right? The liability is not imposed from promulgation date forward based on someone assessing what happened in the past. It's imposed under this scheme where the agency is supposed to do something, and that act creates a three-year period, which creates an obligation to adjudicate attainment and triggers consequences from that point forward. And in that scheme, they choose to backdate the attainment, backdate the designation date, and therefore the attainment date. Well, so, Your Honor, I think that it's not just a question of Congress specifying this. I think this is how the act works in general, that anytime EPA makes a designation, after promulgating an act, it looks at data for the areas around the country that already exist, predating that act. And so the Treasure State case is one example where it was a 2010 sulfur dioxide act, and predating that rule before anyone knew that they might be subject to this limit. To prospectively change a designation. But the consequences that were imposed could have been the exact same. They could have been designated as a moderate area. I think that's one very important point to get across. There's no entitlement to start at marginal. EPA can have the discretion if an area, if it's appropriate in EPA's determination, it can start an area as initially designated as moderate. In fact, we argue in our brief. It could have done that. It could have done so here, because I think there's a very important equitable point to make here, which is that my clients have been living with excessive air pollution since 2016, and Texas has been fighting to delay, delay, delay. Texas initially recommended a non-attainment designation. So there's been an awareness of this problem for quite a long time. So I don't think the Treasure State case is that different. The Wilderness Guardians case that the chief judge also authored, in that case, EPA retained a fast approaching attainment deadline. The deadline was December 2015, and the states only had a year to prepare for that. So they were going to be judged based on two years that had already happened at that point. So again, it's looking at antecedent facts, but the Clean Air Act is a remedial statute. You're supposed to look at antecedent facts. There's no procedural right to three years under the act. In fact, the statute actually says, Section 7511A says, a candidate shall be as expeditiously as practicable, but not later than, and in this case, three years. So I think in Texas' brief, it actually slips up, and it says it should be at least three years. So that's exactly the opposite of what the statute says. It says as expeditiously as practicable, but in no case later than three years. And that brings me to the second question I wanted to briefly answer from the chief judge about whether EPA could have simply extended the attainment deadline for the entire combined area. And Your Honor actually wrote an opinion that NRDC versus EPA, 777F.3, 456, holding exactly that they cannot do that. The statute does not allow EPA to push back attainment dates. And we would also argue that the statute would not have allowed EPA to designate El Paso as a separate area. If you actually look at Table 1, it says the area shall be designated based on the design value of the area. And then the table lists marginal as being, in this case, 71 parts per billion to 81 parts per billion. There's nothing in the scheme that contemplates designating a contributing county separately from the underlying area that's violated. I think NRDC case for me was, I think, early in my career. So it's a long time ago. There's a lot of NRDC versus EPA cases. But to me, the authority of the agency to do something stems in part from the fact of a remand. I think the nature of the beast here is that when there's a remand, while DIRSA exemplifies this, there's often situations in which the agency has to figure out how to accommodate a bunch of things that point in various directions in a complicated regulatory scheme. And it may well be that when there's a remand to revisit something, that that gives some license to the agency to fashion something that, in the first instance, the statute might not have contemplated. And that's what, to me, gives the agency some power in this kind of circumstance. Potentially, I don't know this, but it gives the agency some kind of power to fashion a don't contemplate the possibility of remand for one geographic area that's bound up in another geographic area, and we have to figure out how to reconcile. I think your honor's point is exactly correct. This is a complicated situation that's not contemplated at all in the statute. It's similar to the wildlife guardians case. And it also relates to another point I would like to make is that Texas could not demonstrate reasonable reliance on this. The Treasurer's State case says that reasonable reliance needs to be shown. Texas has been involved in this process from the very beginning. They were parties to Clean Wisconsin. They saw that the El Paso designation was so clearly unlawful that EPA could not even defend it in this court. That was many years ago. So the idea that they were completely caught off guard, in fact... But we also, our remand decision also said that the designation might well be maintained. It did say that. It wasn't obvious that the result was going to be nonattainment. Those of us who follow the case closely, in fact, Texas itself in 2016 initially recommended a nonattainment designation for El Paso. But then they recommended attainment. They did. But I think that the idea that they were completely caught off guard by the fact this might have happened is just not credible. So I certainly appreciate the time. But I do think, like I said, I think it's really important that this is a situation that just is not contemplated by the act. But there would have been problems with the proposals of the Texas case before. And you might have seen us as petitioners in that case. And I think that's the reason why it's so important to defer to the agency when it deals with a complicated situation like this, is because it realized that it could be sued no matter what it does. And you have to give the agency discretion to reasonably resolve competing concerns, including, as I mentioned, significant public health impacts in our area, where every other part of the country has been having some controls in place since 2018. We still don't have them. And we're looking at maybe three more years, which I don't think is what Congress contemplated when it passed the Clean Air Act. Thank you, counsel. I'll make sure my colleagues don't have questions for you. Thank you. Thank you, Erwin. Thank you, Erwin. Mr. Davis, we'll give you two minutes for Ravel. Thank you. And if I could just start with a bigger picture point. The Clean Air Act is about achieving clean air. But Congress doesn't pursue that objective at all costs. It provides important procedural protections to the state, what attainment days are all about, allowing states to have a chance to reach attainment. And this retroactive approach here just cuts the states out of that. And the fact that the states aren't required to do anything doesn't mean that they couldn't have done anything after that non-attainment designation. And in the implementation rule of this act, EPA explained that states in a position of having a designation like this could impose additional controls or could seek voluntary redesignation. There are things states can do that when EPA regulates retroactively this way are off the table. The Treasure State case just doesn't apply here because there it was just looking to pass data to do something perspective ways. I think, Judge Katsas, you may have suggested that's consistent with Justice Scalia's ruling. You agree with my recollection of what that case is? That's right. That's right. And Chief Judge Srinivasan, in the Wilder-Guardian case, I mean, we saw at least three times in that opinion the court talking about the novel circumstances. To us, that's an indication that that can't be applied outside of those circumstances. And I've already mentioned one distinguishing factor. The other is that the court noted that EPA there avoided relying on the counterfactual assumption that subpart four of the statute applied all along. Here, EPA has embraced the counterfactual assumption that El Paso was always part of the Selma Park area. My friend on the other side mentioned Section 110A, that's a SIP provision, 7410A, provides a correction authority. It just doesn't apply here. We're not talking about SIPs. I guess the final thing I would say, I see my time has expired, is this court's decision in the utility air regulatory group that went up to the Supreme Court in 2014 made the point that an agency did not rewrite clear statutory terms to suit its own sense of how a statute should operate. It went on to quote then-Judge Kavanaugh's sentencing opinion from the denial of a hearing. And in our view, that's what should guide the analysis here. I think Mr. Bach is correct that EPA gets sued by all kinds of different sides all the time. Guiding principles should be what does the statute say the agency may and may not do. Thank you, Mr. Davis. Thank you to all counsel. We'll now shift to the arguments in 21-1263. Mr. Shankman, please proceed when you're ready. Thank you, Your Honor. May it please the court. Ethan Shankman for Commissioner of Guelph County. At counsel's table is John Jacobs, also for Guelph County. I'd like to reserve two minutes for him. Your Honor, EPA's decision to freeze the record on renaming Guelph County as of the record that existed as of April of 2018. And to disregard all new evidence, no matter how probative, no matter how relevant, was arbitrary and pernicious for at least four reasons. First, Colorado and Guelph County were denied the opportunity to introduce the most recent data that was available at the time that they received a 120-day notice letter from EPA, which first advised them that EPA seemed to disagree with the designations that Colorado itself had proposed. The first time that was proceeding, which was reviewed in Wisconsin, states that received their 120-day notice letter in December of 2017 were permitted to respond with either 2014 through 2016 data, or if they had early certified data, they could also submit 2017 data. They were permitted to submit in response to EPA's notice. The most recent data that existed as of that time. Here, EPA did not first notify Colorado and Guelph County that it was going to depart from Colorado's recommended designations until the remand, specifically until May 2021. And Guelph County was permitted to comment on that new 183 different decision, but they were told the record is closed. We're only going to look at evidence that was submitted as of April 2018. We are not going to even comment on, let alone consider, any new evidence that existed as of May 2021. Therefore, depriving Colorado and Guelph County of the opportunity that every other state, every other area of the country was provided. And we think it's arbitrary to purchase for that reason. Is there any reason to think this would have made a difference? You say, under the current data, the percentages contributed by northern Guelph County seem relatively low. Four percent NOx, 2.6 percent of volatile organic compounds. Do we have any sense what those numbers would have been under the older data? They were higher under the older data, but Your Honor, yes, that's actually my second point, which is that this would have made a huge difference to the decision. So I'd like to address your question directly, but to start by saying that EPA admits that based on the old record that closed as of April 2018, quote, it does not have an accurate understanding of actual emissions from the northern portion of Guelph County. That's at Joint Appendix 779. During the remand, Colorado Commission and Guelph County submitted new modeling, source apportionment, source apportionment modeling. For the first time in this whole proceeding, allows EPA to isolate the contribution from northern Guelph and northern Claremont County. The data, Your Honor, that you referenced is just emissions. Emissions is just emissions from sources. That's only one factor. You also have to take into account the air quality data, the meteorology, the geography, the topography. This source apportionment modeling that was introduced into the record by Guelph County and commissioned by the state keeps all of those factors together, synthesizes them, and then isolates the contribution from a particular area. It showed that northern Guelph and northern Claremont Counties together contribute 0.4%, 0.4% of in-state contributions of ozone at the most problematic monitor in general. That's compared with within the rest of the non-attainment area, 88%. 0.4% compared with 88%. The other adjacent attainment areas, the attainment area to the west, contributed 8.3%, and the adjacent attainment area to the east, 3.2%. Northern Guelph and northern Claremont County, again, 0.4%, highly significant. Not only are those numbers truly remarkable in terms of showing the very small relative contribution of northern Claremont and northern Guelph Counties, but it killed the exact gap in the record that EPA itself recognized. That's my second reason why it was arbitrary and capricious to completely discard all new data. Third, this court's opinion in Clean Wisconsin expressly recognized that if there were to be remand, that the remand could result in a submission of new or updated evidence. That's at page 1175 of the court's opinion. So this notion that EPA has that the court may assume that it was the nature of the remand, the court somehow didn't expect us to take any new information into the record on remand, I think is belied by the wording of the opinion itself. And the reference to the remand having to be done as expeditiously as practical, that's a term that comes from the Clean Air Act that references a two-year deadline with the possibility of another year extension. There's no ethics in the record whatsoever that there would have been severe delay if EPA had considered the data that had been handed to it and that was sitting there in the record in this case, if it had been required to do so. And fourth, Your Honor, I think it's critical that we look at the reasons that EPA itself gets for freezing the record as of April 2018. But that's what this court needs to judge EPA's decision on and not on the post hoc rationalization by counsel. To what extent do you have a higher burden insofar as you're asking EPA to divide up a jurisdictional weld count? Why isn't it enough for them just to say, we're going to look at these things by counties? And it's one thing if you tell us that weld is different from Irma, but we just don't want to be any more granular. We will divide up areas as the state has seen fit for its purposes and follow their jurisdictional boundaries. Sometimes it does that and sometimes it divides counties. It depends on the facts and, you know, by factors. The Weld County, the non-attainment boundary for Weld County has been divided between South and North Weld County since, I think, the late 1990s. This is the first time that EPA had changed that boundary to include the northern area. Now, Your Honor, stepping back for a second, looking at this court's precedent, because that's what that's EPA's main rationale to the Mississippi Commission case. But we have to step back for a second that this court in Katala said that our precedents require EPA to use the best information available in making its decision. That's the general principle. Mississippi Commission said that if EPA decides not to use more recent data that are available, that it must adequately explain why. Okay. Mississippi Commission was an absolutely different case. That was a case about mismatched data sets. There's no mismatched data sets in this case. Mississippi Commission, the task at hand in Mississippi Commission was to draw the entire non-attainment boundary of a tri-state area that involved Tennessee, Arkansas, and Mississippi. EPA had more recent data from two of the states, but not from one of the states. And so EPA's explanation why it then instead used the older data set that would be complete for all three states was that it didn't want to mix and match data sets for the task at hand, for drawing the whole boundary. In this case, the only task at hand was Welles County, one out of nine counties. That's the only thing that this court remanded. For purposes of just determining the Welles County boundary, EPA had a whole and complete and verified data set from 2018 to 2020. It wouldn't have to, there was nothing mismatched about it. It's a completely different situation. There's other distinctions from Mississippi Commission too. That wasn't a remand case. And the data there, it was only a one-year difference, whereas here the data was five years old by the time EPA sent its first notice. EPA says that if it had been required to use the new data, that might have led to inconsistent results. But there's zero explanation, zero explanation in the record as to what those inconsistent results might have been. Let's ask you under your time's up. I want to ask you the following question. You mentioned that it's important to draw a distinction between what the rationale EPA gave in the instrument under review and the rationale, post-hoc rationale of counsel. What's the delta? What are you specifically concerned about that was added? There's a number of things. But for one thing, your honor, with respect to the new source apportionment data that for the first time enabled EPA to isolate contribution from Northern Well County, that didn't, that ability didn't exist before. In its briefing, DOJ and EPA suggest that there might have been some issues modeling, but that's great for the first time in their brief, in the record, in the decision. EPA doesn't even acknowledge that that data exists. It doesn't raise any, doesn't take issue with its validity, with any technical aspects of the modeling, nor does it take issue with the significance of that data. If I could just make, just close this part of my argument with just one last point, which just sort of sum it up. On EPA's theory, even if, you know, Well County has a handful of sources that are major sources, even if those sources had closed during the remand period, and there were now zero emissions, EPA's theory is, sorry, the record was closed as of April 2018. Even though we gave every other area of the country the opportunity for the most recent evidence, we're not going to give you that opportunity. And I think that illustrates why that was an arbitrary decision. Thank you. Thank you, Mr. Shankman. Mr. Higgins. Good afternoon, and may it please the court. I'm Elliot Higgins from the Department of Justice representing EPA. I will be arguing in response to Petitioner Well County. I will be splitting my time with interveners in support of the Well designation. I had eight minutes, interveners have two. In 2018, EPA concluded that Northern Well County did not contribute to nearby violations of the 2015 Oklahoma acts, and therefore designated the area as being in attainment of those acts. This court remanded that designation, observing, among other things, that Well County sources generate exceptionally high amounts of VOCs and NOCs. On remand, EPA re-evaluated the extensive technical record report at the time of the 2018 designation, and concluded that emissions in Northern Well County did in fact contribute to nearby NOCs violations. EPA therefore revised its designation of Northern Well County as being in non-attainment. In reaching this highly technical designation, EPA observed that Well County's NOCs and VOC emissions were those of all other counties in EPA's area analysis. Indeed, Well County alone emitted more than half of the Denver Metro's VOC emissions, and one quarter of its NOCs emissions. Much of these emissions result from oil and gas activities, which are present in both Northern and Southern Well County. Furthermore, EPA's meteorology and topography analyses show that the Denver Mesa influences meteorology to trap emissions from Northern Well County and produce ozone in the Denver Metro non-attainment area. Before you dive into the five factors, can I just ask you about the threshold question in which data to use? That seems a little troubling. The case goes back on remand, and the agency has a remand without vacature because the original attainment designation was not adequately explained. Back on remand, you have one of two choices. You can either try to embellish the explanation in order to defend the designation that had been made some years in the past, or you could take new agency action to change an attainment designation into a non-attainment designation. You chose the latter, which is fine, but it still requires new agency action that by definition has to take place some years later. That just seems very different from Mississippi Commission. Well, Your Honor, it was reasonable for the agency to rely on the existing technical record for at least three reasons. First, reliance on the existing data maintains consistency within Roe County, within the nine-county Denver metropolitan area, and across the country. Second, the reliance on existing data is in keeping with this court's precedents, including the Mississippi Commission case that you referenced, in which this court concluded that EPA reasonably declined to consider newer data in favor of a matched data set. And the third reason... When they're making all these designations at once and they have data flowing in from different years, some are certified, some are not. Here's the agency action designating everything countrywide. We're just going to use the same set. Well, Your Honor, EPA was not reevaluating Roe County in a vacuum. EPA had 10 other designations on remand from the Clean Wisconsin case. So it had to make this decision across the entire country. And in light of this court's unusual set to set the time dimension on remand, it required the agency to act as expeditiously as practicable, which was not a small point in the Clean Wisconsin case. There was supplemental briefing on this issue with various entities arguing that the agency was not acting quickly enough. EPA decided to rely on the existing technical record. And that's a highly technical decision that... Does that take you to the point that was referenced by your colleague on the other side, that if the sources had shut down in the relevant area and the emissions were zero, that it still wouldn't have been non-arbitrary and capricious to rely on the old data set? Your Honor, I'm not familiar with that particular point in the other case, but what I can say is... Oh, not in the other case. I'm just referencing the argument that was just made that the upshot of EPA's decision to use the pre-existing data rather than take into account subsequent developments would be that even if in that intervening period, the sources had all shut down and there were zero emissions at this point, still we'd be judging it based on data that had not taken that into account. The agency would take a position that that's okay to do, that that's not arbitrary and capricious. Yes, Your Honor, that's correct. And if that was the case, and if all the sources shut down in Northern Will County, the Will County would not be without remedy. They could petition the agency for a redesignation in light of newer data that shows that Will County should no longer be a non-attainment area. So the county is not without remedy if it thinks that this new data shows that Will County is in attainment. However, that's an entirely speculative proposition. EPA has not looked at that new data and made a determination one way or the other, whether the new data shows that the Northern Will County is in attainment or not. It's a procedural one, that for failure to actually file a petition, EPA had no rational basis to consider this new data that showed new things that were quite pertinent or purportedly showed new things that were quite pertinent. All right. Judge Rogers says... Oh, I'm sorry, it's yellow, not red. Your Honor, we had a remand of this particular designation action, so of the original designation action. I know, I know, I understand that, but I'm not answering Judge Katz's question. That's all I'm getting at. And you said, well, this is going to file the petition. Right, Your Honor. In the first instance, my point is that EPA's decision to rely on the existing administrative record was a reasonable one under some circumstances. In this case, where... Stop that, stop that. Because you say, because it's about the region. Right, Your Honor.  that it had a match data set for each of the states, throughout the Denver metro non-attainment area. So it wanted to make sure that it was designating Northern Weld County using the same data that it used to designate Southern Weld County as well as the rest of the Denver metro non-attainment area. Oh, that is obligated to state to examine the situation every two years, or is that another provision? I apologize, Judge Rogers. I didn't quite hear your question. Is there any statutory I would consider change circumstances periodically? Yes, Your Honor. Through the classification process, EPA evaluates whether, you know, basically how the Denver non-attainment area is doing. So periodically, EPA evaluates whether the monitors are still violated, what the quality of the air is, and that allows for some reassessment, forward-looking reassessment. Suppose there were no remand involved. Just EPA made designations to find the attainment area not to include Northern Weld County as they designate Northern Weld as attainment. You know, and then three years go by, and EPA starts rethinking and comes to the conclusion that they should change the attainment area to pull in Weld County. Maybe they should do that, and they're considering that. Could they, at that point, just refuse to consider current data on that question, just in the interest of, well, we have this Denver area, and we've been using five-year-old data to assess it. So we're going to use old data on this new question, whether to pull Northern Weld County in. Dr. Meyer, I don't precisely know the answer to your question, whether it would use the existing data set or whether it would use new data. That's not something that I've discussed with EPA. Yeah, but I think the question is not what they actually would do, but if they did use, would that be arbitrary? If, in the future, EPA decides that Northern Weld County needs to be in attainment, or it needs to be in non-attainment and relies solely on the existing data set, and this is three years in the future. Right. I think it would depend on the facts and circumstances of that case, recognizing that... What's the scenario in which it would be okay to do that? Well, I think the agency would want to be careful not to treat areas inconsistently, as that is the hallmark of arbitrary and capricious action. So I think the agency would want to... So then the greater the agency, then just say that we treated this large area, which is composed of 17 smaller areas, consistently. So we're not going to entertain any petitions for re-designation as to any sub-area, because that would require us to be inconsistent. Well, I would note, Aaron, that the petition for reconsideration actually involves the... It contemplates the consideration of new data. So it's a separate process than the original designation process, which necessarily requires a matched data set. Can you say necessarily requires, meaning that it's legally required, or meaning that just that's the best way to do business? That's just the best way to do business. I shouldn't say necessarily required. It's a reasonable choice to rely on a matched data set, which is what the agency decided to do under the circumstances of this case. Okay. Thank you, counsel. We'll hear from Mr. Mehar now. Okay. Okay. Please report. Ryan Mehar on behalf of Boulder County and the other intervenors in the Weld County case. I'd like to address three quick points. First, EPA has justified its use of the original data set that it used for making its initial designations to now add more to Weld County in the non-attainment area. Weld does not provide any authority requiring EPA to consider Weld's new data. Second, even if the court did consider new data, which it should not, the new data would actually compel EPA to reach its safe conclusion, contrary to Weld's assertion. That's because Weld County now contains an air quality monitor that shows a violation of the ozone standard in the county itself for the most recent data period, 2019 to 2021. In northern or southern? That's in southern Weld County, Your Honor, but there is not a monitor in northern Weld County. The monitor that displays the violation is only 23 miles south of the arbitrary line that divides northern and southern Weld County, while ozone pollution can travel hundreds of miles. EPA typically considers a whole county to be a non-attainment if it contains a violating monitor. That's unless there's a significant geographical feature like a mountain range that would intervene to prevent pollution from traveling throughout the county and causing harm throughout the county. There is no such landscape feature here that was partially litigated in clean Wisconsin. Practically speaking, EPA would be doubly compelled to reach the same conclusion if this matter were remanded because Weld County both contributes to violations in other counties and now itself contains a violating monitor. I'd quickly like to point out that recent data also contradicts Weld's claim that oil and gas emissions have gone down significantly since 2011. Even if emissions were going down, which is not the case, the Clean Air Act is concerned with attainment of the standards, and we've seen that Colorado  This court should deny this position. Thank you. Thank you, counsel. Um, Mr. Shekman, we'll give you the two minutes for rebuttal.  Thank you, your honor. Two quick points in response to interviewers. First, their argument that the more recent data as of May 2021 would not have made a difference. That's a perfect example of post-hoc rationalization. EPA does not state that as a rationale. It's not reached that conclusion. It's not even evaluated. Second, interviewers... Can't the lawyers defend on harmless air grounds? They can't. They can defend... I'm not sure that counts as post-hoc rationalization. No, the argument that it literally would not have made a difference is a technical argument that needs to be something that EPA has concluded in the record. But in any event, and I want to get the citations for the record, Joint Appendix 1149, the Joint Appendix 158 are where the source of poor commitment modeling is that shows what northern Weld County and what's in inner Weld County only contribute 0.4% in state frozen. So there's no possibility that this could be a harmless air. Also, interviewers cite to this argument they make about a new monitor in Weld County. That's based on data that even post-date May 2021, and it's not in the administrative record that it's before this court. So it should be completely... Now, in response to my friend from Department of Justice, he brought up on the consistency point. He brought up the fact that with respect to the other 14 counties that have been remanded, EPA also limited its consideration to the old record. So we want to be consistent. But Your Honor, this proves our point. For all of those other 14 counties, EPA either affirmed the state's original proposals, so no problem, they can stick with the old record, or they had already given the states in those cases before, the first time around, their 120-day notice. So those states in those cases had been given the opportunity to put in the most recent data available as of the time they received notice from EPA that EPA was going to disagree with the state's recommendations. And this is... I just want to give you the citation from that, from their decision and 14 other cases, is that 86 Federal Register 31442, EPA notes that EPA's December 2017 initial designation and April 2018 final designation, both states including Wisconsin, aligned at that time with Texas' and Colorado's recommendations for El Paso and both counties reciprocally. And so at that time, EPA had no need to, and did not notify the states that the agency planned to modify the state's recommendations. EPA did that for the first time in May 2021, and the state and both counties should have been given the opportunity to put in the most recent data available. Thank you, Your Honor. Thank you, counsel. Thank you to all counsel. We'll take these cases under submission.
judges: Srinivasan, Katsas, Rogers